UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CENTENNIAL MILL BY DEL WEBB COMMUNITY ASSOCIATION, INC.,

    Plaintiff,

v.

PLY GEM HOLDINGS, INC., PLY GEM INDUSTRIES, INC., MASTIC HOME EXTERIORS, INC., and MW MANUFACTURERS, INC., successor to PATRIOT VINYL CORPORATION, d/b/a PATRIOT VINYL WINDOWS AND DOORS,

    Defendants.

No. 1:17-cv-7675 (NLH/JS)

**OPINION**

**APPEARANCES**:

DAVID R. DAHAN
JULIE M. MURPHY
HYLAND LEVIN LLP
6000 SAGEMORE DR.
SUITE 6301
MARLTON, NJ 08053
    On behalf of Plaintiff

BROOKS HOWARD LEONARD
MICHAEL J. ROSSIGNOL
RIKER DANZIG SCHERER HYLAND PERRETTI LLP
HEADQUARTERS PLAZA
ONE SPEEDWELL AVENUE
MORRISTOWN, NJ 07962
    On behalf of Defendants

STEVE M. PHARR (pro hac vice)
PATRICK T. VANDERJEUGDT (pro hac vice)
PHARR LAW, PLLC
8 WEST THIRD ST.
SUITE 600
WINSTON-SALEM, NC 27101
    On behalf of Defendants

**HILLMAN**, District Judge

Before the Court is Plaintiff's Motion to Remand based on a forum selection clause in a Settlement Agreement entered into between the parties in conjunction with previous litigation in the New Jersey Superior Court, Law Division. Also before the Court is Defendants' Motion to Seal, which is opposed by Plaintiff. For the reasons that follow, the Court will deny both the Motion to Remand and the Motion to Seal.

**I.**

Plaintiff's July 10, 2017 Complaint contains the following allegations. On August 19, 2011, Jerry and Iris Schechtman brought suit against Plaintiff in the Superior Court of New Jersey, Law Division. Plaintiff, in turn, filed a Third-Party Complaint against Defendants. This litigation related to damage to the vinyl siding covering certain homes in the Centennial Mill community, caused by a phenomenon known as "thermal distortion."[1]

On March 3, 2014, Plaintiff and Defendants entered into a Settlement Agreement, which provided that Defendants would replace certain window units causing the thermal distortion to the siding of certain homes. However, after the Settlement

---

[1] According to the Complaint, "[t]hermal distortion occurs when heat generated from concentrated sunlight reflects from windows of certain homes, which visibly damages and distorts vinyl siding."

2

Agreement, thermal distortion occurred at other locations. Despite requests from Plaintiff, Defendants have not addressed these defects.

Plaintiff's Complaint asserts twelve counts against Defendants. This matter was removed to this Court on September 29, 2017. Plaintiff filed its Motion to Remand on October 27, 2017. Defendants filed their Motion to Seal on November 28, 2017.

## II.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiff is a New Jersey corporation with its principal place of business in New Jersey. Defendant Ply Gem Holdings is a Delaware corporation with its principal place of business in North Carolina. Defendant Ply Gem Industries is a Delaware corporation with its principal place of business in North Carolina. Defendant Mastic Home is a Delaware corporation with its principal place of business in Missouri. Defendant MW Manufacturers is a Delaware corporation with its principal place of business in Virginia. As there is complete diversity between the parties and Defendants' Notice of Removal states there is an amount in controversy in excess of $75,000, exclusive of interest and costs, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

**III.**

It is well-settled "that the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007). "Removal is strictly construed and all doubts are resolved in favor of remand." Salibelo Consulting Assocs., LLC v. Shenfeld, No. 10-4162, 2010 WL 5466848, at *3 (D.N.J. Dec. 30, 2010) (citing Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004)), adopted by 2011 WL 317757 (D.N.J. Jan. 28, 2011).

"[A] valid forum selection clause constitutes a contractual waiver of a defendant's right to remove an action to federal court." Id. (citing Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207, 1216 (3d Cir. 1991)). When there is a valid forum selection clause, remand is "appropriate even if the language of the clause does not expressly bar removal." Id. (citing Karl Koch Erecting Co. v. N.Y. Convention Ctr., Dev. Corp., 838 F.2d 656, 659 (2d Cir. 1988)).

**IV.**

Plaintiff asks the Court to remand this matter, arguing that a forum selection clause in an earlier Settlement Agreement between the parties is controlling. Defendants oppose, arguing the earlier Settlement Agreement was limited to an identified

296 window units, whereas this matter concerns window units at other locations not identified in the earlier Settlement Agreement.

The Settlement Agreement provides: "The parties agree that the Superior Court of New Jersey, Camden County shall retain jurisdiction to enforce the terms of this Agreement." "A court considering the interpretation of a forum selection clause applies principles of contract law to determine the scope of the clause." Collins v. Mary Kay, Inc., 874 F.3d 176, 180 (3d Cir. 2017) (citing John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1073 (3d Cir. 1997)).

The Third Circuit recently explored what law this Court is to apply in determining the scope of a forum selection clause in Collins, 874 F.3d 176. The Third Circuit noted that "[i]ssues of contract interpretation are considered 'quintessentially substantive,' rather than procedural, under Erie." Id. at 182 (quoting Martinez v. Bloomberg LP, 740 F.3d 211, 221 (2d Cir. 2014)). The Third Circuit determined that, "as a general rule in diversity cases, courts should apply state contract law to decide interpretation questions," and that the "restricted areas" which allow for deviation from this general rule do not apply in "contracts between two purely private parties that set forth the terms and conditions of their relationship and do not implicate any federal interests." Id. (quoting Martinez, 740

F.3d at 221-22). The Third Circuit found that "[a]pplying federal common law to these issues would 'generate a sprawling "federal general common law" of contracts,' which the Supreme Court in Erie advised courts to avoid. Applying state contract law to these claims eliminates the Erie problem." Id. Accordingly, the Third Circuit concluded that "state contract law, rather than federal common law," should "govern[] the interpretation of the forum selection clauses." Id. at 183.

Accordingly, the Court looks to state contract law. The Settlement Agreement provides that it "shall be interpreted, governed and construed in accordance with the laws of the State of New Jersey." "New Jersey choice-of-law rules provide that '[o]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice.'" Id. at 183-84 (quoting Instructional Sys., Inc. v. Comput. Curriculum Corp., 614 A.2d 124, 133 (N.J. 1992)); see also Ciecka v. Rosen, 908 F. Supp. 2d 545, 552 (D.N.J. 2012) ("A federal district court applies the forum state's choice of law rules to diversity actions."). While "New Jersey looks to Restatement § 187 to determine under what circumstances a choice-of-law clause will not be respected," Collins, 874 F.3d at 184, the Court finds none of those circumstances present here. The Court finds that, under

6

New Jersey choice-of-law principles, the Court must apply New Jersey contract law.

"[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." <u>Impink ex rel. Baldi v. Reynes</u>, 935 A.2d 808, 812 (N.J. Super. Ct. App. Div. 2007) (quoting <u>Karl's Sales & Serv., Inc. v. Gimbel Bros., Inc.</u>, 592 A.2d 647 (N.J. Super. Ct. App. Div. 1991)). The Court finds the forum selection clause here unambiguous. The Settlement Agreement provides for the Superior Court of New Jersey to "retain jurisdiction to enforce the terms of this Agreement." Only where a party is arguing the Settlement Agreement is not being adhered to and asking a court to enforce its terms does the forum selection clause apply. Whether that is this case is the primary dispute between the parties.

The Court also applies New Jersey law in interpreting the other provisions of the Settlement Agreement.

> A settlement agreement is governed by basic contract principles. Among those principles are that courts should discern and implement the intentions of the parties. It is not the function of the court to rewrite or revise an agreement when the intent of the parties is clear. Stated differently, the parties cannot expect a court to present to them a contract better than or different from the agreement they struck between themselves. Thus, when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.

7

Quinn v. Quinn, 137 A.3d 423, 429 (N.J. 2016).

The Settlement Agreement states:

Mastic and MW shall, at their sole cost and expense, cause the Work described in the Warranty Contract to be performed in accordance with the terms of the Warranty Contract for the benefit of the Association. A copy of the Warranty Contract is attached hereto as Exhibit "A" and is incorporated herein as if fully set forth at length. The Third-Party Defendants, Ply Gem Holdings, Inc., Ply Gem Industries, Inc., Mastic and MW are individually, jointly and severally liable for all obligations under this Agreement and the Warranty Contract.

It later states:

In the event that Ply Gem breaches any term of this Agreement, the Association shall have the right to enforce this Agreement by specific performance and in the event of any such breach, the Association shall be made whole so that it is in the same position it would have been in but for such breach and shall be entitled to recover all damages and reasonable attorney's fees, costs and expenses from Mastic and/or MW in connection with enforcing the terms of this Agreement. In the event that Mastic and/or MW fail to complete the Work as contemplated in this Agreement and the Warranty Contract after notice and a reasonable period to cure such failure, the Association shall have the option to engage a third party to complete the Work and shall be entitled to recover damages resulting from Mastic and/or MW's failure to complete the Work and the Association having to engage such third party to complete the Work including, but not limited to, reasonable attorney's fees, costs and expenses. The parties agree that the Superior Court of New Jersey, Camden County shall retain jurisdiction to enforce the terms of this Agreement.

The Court must also consider the terms of the Warranty Contract, which was incorporated into the Settlement Agreement. The Warranty Contract states: "MW shall pay for and provide all labor and materials to replace two hundred ninety-six (296)

window 'Units' (including the insulated glazing (i.e., glass) and ashes as set forth herein) at those locations identified in Exhibit '1' which consists of a quantity chart . . . ." Section J of the Warranty Contract, entitled "Warranty," provides: "The original warranty for the original and replacement MW windows remains in place. The original warranty for the original and replacement Mastic siding materials remains in place. This Section J shall not affect or limit any of the Association's other rights under this Warranty Contract." Plaintiff argues that the Settlement Agreement "confirmed that the original warranties remained in place" and Section J "incorporate[ed] . . . the original warranties," such as the warranty that "[a]ll Vinyl Components of the Vinyl Window are warranted during the lifetime of the Original Homeowner (defined in Section II below) to be free of any defects in material and workmanship."[2]

Section K of the Warranty Contract is entitled "Preservation of Claims." It provides:

> As set forth in Section A.3(D), MW represents that the window Units to be supplied shall eliminate or sufficiently reduce the concentration of the sunlight reflection so as to prevent the occurrence of Thermal Distortion. Notwithstanding anything to the contrary, in the event Thermal Distortion occurs, MW and/or Mastic shall promptly take any and all action necessary to

---

[2] The Court accepts Plaintiff's representation that this language is included in the original warranty. The document provided to the Court is unreadable.

> repair any resulting damage and eliminate the Thermal
> Distortion phenomenon and the Association shall have the
> right to enforce this provision.

Plaintiff argues Section K "applies to elimination of the entire 'thermal distortion phenomenon'" and "shows that the Settlement Agreement is not limited to the specific units claimed by Defendants." Plaintiff argues: "It clearly was anticipated by the parties that Plaintiff would 'have the right to enforce' the requirement for Defendants to 'eliminate the thermal distortion phenomenon,' . . . . This is also a part of the reason that additional warranties . . . were attached to the Settlement Agreement." Defendants, however, interpret Section K to apply only "to thermal distortion to the extent caused by the 296 replacement window Units."

The Court is unconvinced the Settlement Agreement is as broad as Plaintiff contends. The Settlement Agreement provided that Defendants would complete the Work described in the Warranty Contract. As a result, the claims against Defendants would be dismissed. The Work described in the Warranty Contract consists of Defendants "pay[ing] for and provid[ing] all labor and materials to replace two hundred ninety-six (296) window 'Units' . . . and sashes." The Warranty Contract further provided that Defendants would remedy any thermal distortion that might occur on "the window Units to be supplied," i.e., the 296 identified units. It also explicitly stated that the

10

original warranty for the windows and siding materials "remain[ed] in place."

The Court finds the Settlement Agreement and Warranty Contract to be clear and unambiguous. The Warranty Contract solely concerned the 296 units to be replaced. It, of course, makes sense that the Settlement Agreement and Warranty looked back in time to resolve the existing dispute between the parties. While the Settlement Agreement made clear that the original warranty remained in place, nothing in the documents suggests the warranties were renewed or separately incorporated into the Warranty Contrary. Rather, it appears the parties merely sought to make clear that nothing in the settlement voided or narrowed the original warranties or foreclosed any additional claims, causes of action, or remedies if similar problems arose in the future. The Court finds enforcement of the original warranty for additional units beyond the original 296 is not encompassed within the terms of the Settlement Agreement.

Plaintiff's arguments to the contrary are unpersuasive. First, the mere fact that the original warranty was apparently attached to the Settlement Agreement does not alter the otherwise narrow scope of the agreement. Nor does it matter how extensively or aggressively the earlier matter was litigated in state court, that there was no objection by Defendants to state

court jurisdiction in that litigation, or that the parties' recognized that thermal distortion was an ongoing problem. Such extraneous matters cannot alter the agreement's plain and unambiguous terms.

Accordingly, the Court finds the forum selection clause in the Settlement Agreement did not waive Defendants' right to remove and does not control the jurisdiction where Plaintiff's claims may be heard.[3] This Court will retain jurisdiction.

**V.**

The Court last addresses Defendants' Motion to Seal. Defendants ask this Court to seal the unredacted versions of the following documents: (1) Brief in Opposition to Plaintiff's Motion to Remand; (2) Certification of Steve Pharr; (3) Reply Brief in Support of Motion to Remand; (4) Certification of David R. Dahan; and (5) Certification of Peter Oteri.

Defendants state:

> In opposition to Plaintiff's Motion to Reman[d], to demonstrate the inapplicability of the forum selection clause, Defendants relied, in part, on the Confidential Documents, which include confidential settlement communications pertaining to the resolution of the Prior Lawsuit and the negotiation of the Settlement Agreement. Additional documents and discussion pertaining to settlement and negotiations were relied upon by Plaintiff in Reply.

---

[3] The Court makes no determination at this time as to the merits of Plaintiff's Complaint, which appears to assume its claims fall within the purview of the Settlement Agreement.

Defendants argue disclosure of this information would "cause substantial harm to Defendants and impair their ability to defend against other claims of alleged 'Thermal Distortion.'" Defendants argue they have been sued, and may later be sued, in other matters relating to thermal distortion, and that "public access to the Confidential Documents will provide other/future claimants or co-defendants the opportunity to attempt to utilize the information therein in pursuit of liability claims against Defendants, and thus, such disclosure will impair Defendants' ability to effectively defend against other/future disputed claims." Plaintiff opposes Defendants' Motion to Seal, arguing Defendants lack good cause for sealing. The Court agrees.

Local Civil Rule 5.3(c) provides that the following must be established in a motion to seal:

(a) the nature of the materials or proceedings at issue;

(b) the legitimate private or public interest which warrant the relief sought;

(c) the clearly defined and serious injury that would result if the relief sought is not granted;

(d) why a less restrictive alternative to the relief sought is not available;

(e) any prior order sealing the same materials in the pending action; and

(f) the identity of any party or nonparty known to be objecting to the sealing request.

The Court finds Defendants have failed to justify their Motion to Seal with regard to convincing this Court that there are "legitimate private or public interest[s] which warrant the relief sought" and that "clearly defined and serious injury . . . would result if the relief sought is not granted."

The Court has closely reviewed the documents Defendants ask the Court to seal and cannot discern a legitimate private or public interest warranting sealing, nor a serious injury that would result to Defendants. Defendants' index is not persuasive, as it does not state with particularity any harm that would result. Rather, Defendants' index broadly claims: "Public access to information concerning the alleged 'thermal distortion' in settlement communications and negotiation could disadvantage Defendants in other matters/litigations." Preliminarily, some of the information Defendants ask the Court to seal can be obtained, or easily inferred, from documents already publicly filed, such as the length of the settlement negotiations, that the state court litigation concerned the thermal distortion phenomenon, and the definition of thermal distortion.

However, even as to other information that might not be available to the public now, the Court does not find sufficient basis to seal. This Court has repeatedly emphasized the public interest in the disclosure of materials filed on this Court's

14

docket, which often outweighs private interests in confidentiality.  This Court is funded by the public and does not sit, in general, to resolve private disputes in secret.  Finding Defendants lack a legitimate justification to warrant sealing the identified information, the Court will deny Defendants' Motion to Seal in full.

An appropriate Order will be entered.


Date: June 22, 2018        s/ Noel L. Hillman
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.